AUSAs: Catherine Ghosh, Jerry Fang, Meredith Foster, Sebastian Swett, Jacob Fiddelman

| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | **24 MAG 469** |
| UNITED STATES OF AMERICA | <u>**SEALED COMPLAINT**</u> |
| v. | Violations of 18 U.S.C. §§ 666 and 1951 |
| JUAN MENDEZ, | COUNTY OF OFFENSE:<br>NEW YORK |
| Defendant. | |

SOUTHERN DISTRICT OF NEW YORK, ss.:

      RASOVE RAMIREZ, being duly sworn, deposes and says that he is a Special Agent with the United States Department of Housing and Urban Development – Office of Inspector General ("HUD-OIG"), and charges as follows:

### <u>COUNT ONE</u>
### (Solicitation and Receipt of a Bribe by Agent of Organization Receiving Federal Funds)

      1.      From at least in or about December 2016 through at least in or about May 2021, in the Southern District of New York and elsewhere, JUAN MENDEZ, the defendant, being an agent of an organization, and of a state, local, and Indian tribal government, and an agency thereof, to wit, the New York City Housing Authority ("NYCHA"), which received, in the calendar years 2018, 2019, 2020, and 2021, benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance, corruptly solicited and demanded for the benefit of a person, and accepted and agreed to accept, a thing of value from a person, intending to be influenced and rewarded in connection with business, a transaction, and a series of transactions of NYCHA involving a thing of value of $5,000 and more, to wit, MENDEZ solicited and accepted a total of at least approximately $3,500 in bribes in exchange for arranging for certain contractors to receive no-bid contracts from NYCHA worth a total of at least approximately $45,000.

      (Title 18, United States Code, Section 666(a)(1)(B).)

### <u>COUNT TWO</u>
### (Extortion Under Color of Official Right)

      2.      From at least in or about April 2018 through at least in or about May 2021, in the Southern District of New York and elsewhere, JUAN MENDEZ, the defendant, knowingly committed and attempted to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), and thereby obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, MENDEZ, under color of official right, obtained money from NYCHA contractors, with their consent, that was not due MENDEZ or his office.

(Title 18, United States Code, Section 1951.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

## OVERVIEW

1. I am a Special Agent with HUD-OIG, and I have been personally involved in the investigation of this matter. I have been employed by HUD-OIG since 2008. I and other members of the investigative team, which includes agents from HUD-OIG, the United States Department of Homeland Security – Homeland Security Investigations ("HSI"), the United States Department of Labor – Office of Inspector General ("DOL-OIG"), the New York City Department of Investigation ("NYC DOI") – Office of the Inspector General for NYCHA ("NYCHA-OIG"), and the United States Attorney's Office for the Southern District of New York ("USAO-SDNY") (collectively, the "Investigating Agencies"), have experience with bribery and extortion investigations and techniques associated with such investigations.

2. This affidavit is based in part upon my own observations, my conversations with other law enforcement agents and others, my examination of documents and reports prepared by others, my interviews of witnesses, and my training and experience. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of the investigation. Where the contents of documents, including emails, and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where specifically indicated otherwise.

3. As set forth in more detail below, there is probable cause to believe that JUAN MENDEZ, the defendant, an employee of NYCHA at all relevant times, solicited and accepted bribes from contractors in exchange for awarding no-bid contracts for work performed at Jefferson Houses and Johnson Houses, and extorted contractors under color of official right.

## BACKGROUND REGARDING NYCHA AND NO-BID PROCESS

4. Based on my training and experience, review of records and manuals maintained by NYCHA, discussions with NYCHA employees, and discussions with other agents with the Investigating Agencies, I have learned that:

    a. NYCHA is a New York City public entity that provides housing to low- and moderate-income New York City residents.

    b. NYCHA's operations are funded, in part, by grants from the United States Department of Housing and Urban Development ("HUD"). In each year from at least 2016 through 2021, HUD provided over $1.5 billion in funding to NYCHA, making up a substantial portion of NYCHA's budget.

    c. NYCHA procurements funded at least in part through federal funds must abide by various federal regulations, including that NYCHA must conduct all procurement transactions "in a manner providing full and open competition." As such, goods and services must

typically be purchased via a bidding process in which NYCHA receives multiple bids after outreach to multiple prospective bidders.

        d. When the value of a contract is under a certain threshold (sometimes called a "micro purchase," and which contractors often refer to as a "purchase order" or "PO" contract), designated staff at NYCHA developments may hire a contractor of their choosing without soliciting multiple bids in order to quickly procure goods or services. This "no-bid" process is faster than the general NYCHA procurement process, and selection of the contractor requires approval of only the designated staff at the development where the work is to be performed. As is relevant to this Complaint, the threshold for a no-bid contract was $5,000 until approximately June 26, 2019, and was then raised to $10,000.

        e. For no-bid contracts, designated NYCHA staff typically communicate with a contractor to request an estimate for the proposed work. The contractor performs an initial site visit and then submits an itemized proposal to the designated staff. The NYCHA employee submits this proposal electronically to the NYCHA Procurement Department, located at 90 Church Street, New York, New York, and upon approval by the Procurement Department a purchase order is issued. After the Procurement Department issues the purchase order, the contractor then performs the work. After the work is completed, a designated NYCHA development staff member performs a site visit. If the staff member deems the contractor's work satisfactory, the NYCHA staff member approves the contractor's "statement of services" and submits it to NYCHA, which then issues payment directly to the contractor or to the contractor's bank account.

        f. NYCHA employees receive the NYCHA Human Resources Manual (the "Manual"), including periodic updated versions. Versions of the Manual from at least 2016 to the present state that "Employees of NYCHA may ***not***: . . .

> • Accept a valuable gift as defined by the NYC Conflicts of Interest Board[1] from anyone that employees know or should know is seeking or receiving anything of value from the City or NYCHA.
>
> • Accept anything from anyone other than NYCHA for doing their NYCHA job, except as may be expressly authorized by NYCHA. . . .
>
> • Fail to report directly and without delay, to the Office of the Inspector General or the New York City Department of Investigation, any and all information concerning conduct that they know or should reasonably know to involve corrupt or other criminal activity or conflict of interest by any officer or employee of NYCHA or the City of New York which concerns their office or employment, or by any person dealing with NYCHA or the City of New York, which concerns their dealings with NYCHA or the City of New York. . . .
>
> • Bribe, attempt to bribe, or solicit, give, agree to accept or accept a gratuity, benefit, money or anything of value in connection with their actions or duties as

---

[1] The NYC Conflicts of Interest Board defines a "valuable gift" as "any gift to a public servant which has a value of $50.00 or more, whether in the form of money, service, loan, travel, entertainment, hospitality, thing or promise, or in any other form."

3

employees or in connection with the actions or duties of any other employee of NYCHA.

• Engage in any dishonest conduct, including but not limited to theft, fraud, [or] deceit, . . . falsifying or inappropriately altering any document, record, file or form of NYCHA or other entity, or knowingly submitting any falsified or inappropriately altered document, record, or form to NYCHA or other entity.

• Coerce or attempt to coerce, by intimidation, threat or harassment, any employee or resident of NYCHA or member of the public to engage in any activity that violates any law, or government regulation or any NYCHA rule or regulation."

## JUAN MENDEZ'S EMPLOYMENT BY NYCHA

5. Based on my review of records provided by NYCHA, I have learned the following, in substance and in part, regarding the NYCHA employment history of JUAN MENDEZ, the defendant:

a. From at least on or about July 25, 2016, through at least on or about January 6, 2019, MENDEZ was employed as a superintendent at Jefferson Houses, a NYCHA development located in New York, New York.

b. From at least on or about February 11, 2019, through at least on or about June 20, 2021, MENDEZ was employed as an assistant superintendent at Johnson Houses, a NYCHA development located in New York, New York.

## JUAN MENDEZ'S SOLICITATION AND RECEIPT OF PAYMENTS[2]

6. Based on my review of records provided by NYCHA, my discussions with other law enforcement officers, and my discussions with a cooperating witness ("CW-3")[3] who has performed work at NYCHA's Jefferson Houses and Johnson Houses, among other developments,[4] and my review of records provided by CW-3, I have learned the following, in substance and in part:

---

[2] On or about February 17, 2022, law enforcement agents with NYC DOI interviewed JUAN MENDEZ, the defendant. During that interview, MENDEZ stated, in substance and in part, that he had never accepted payments from NYCHA contractors.

[3] The cooperating witnesses referenced in this Complaint are designated as "CW-3" and "CW-25" because this Complaint is being sought simultaneously with dozens of other Complaints charging other NYCHA employees arising out of the same investigation, and the Government has assigned unique numbers to cooperating witnesses across the entire investigation.

[4] CW-3 testified in the grand jury pursuant to an immunity order, and previously provided information to law enforcement during an additional interview pursuant to an agreement to extend the same immunity protections to the interview.

a. From at least 2018, CW-3 performed contracting work for NYCHA as the operator of a contracting company (the "CW-3 Company") that purchased materials from various retailers, including retailers that sold items in interstate commerce.

b. CW-3 began performing no-bid purchase order work at Jefferson Houses in or about April 2018. The CW-3 Company completed approximately 10 contracts at Jefferson Houses between in or about April 2018 and in or about January 2019, during the time in which MENDEZ served as a superintendent at that NYCHA facility.

c. CW-3 paid MENDEZ for approximately 60% to 75% of the no-bid contracts that MENDEZ awarded him at Jefferson Houses. The payments that CW-3 made to MENDEZ for work at Jefferson Houses varied from anywhere between approximately $300 to $1,000. All payments were made in cash.[5]

d. CW-3 began performing work at Johnson Houses in or about July 2018. CW-3 completed approximately 29 contracts at Johnson Houses between in or about June 2019 and in or about May 2021, during the time in which MENDEZ served as an assistant superintendent at that NYCHA facility.

e. Between in or about June 2019 and in or about May 2021, CW-3 paid both MENDEZ and the superintendent at Johnson Houses for the no-bid contracts that CW-3 was awarded at Johnson Houses. CW-3 paid MENDEZ for approximately 20% of the no-bid contracts CW-3 was awarded at Johnson Houses and paid the superintendent for the remaining approximately 80% of the no-bid contracts that CW-3 was awarded at Johnson Houses. The payments that CW-3 made to MENDEZ for work at Johnson Houses varied from anywhere between approximately $500 to $1,000. All payments were made in cash.

f. CW-3 Company bank records show cash withdrawals around the time that CW-3 was awarded certain no-bid contracts at Johnson Houses during the time that MENDEZ served as an assistant superintendent at that NYCHA facility. For example:

i. On or about January 10, 2020, approximately $980 in cash was withdrawn from the CW-3 Company bank account. Approximately one day earlier, on or about January 9, 2020, CW-3 was awarded an approximately $5,000 no-bid contract at Johnson Houses.

ii. On or about May 20, 2020, approximately $2,500 in cash was withdrawn from the CW-3 Company bank account. Approximately one day earlier, on or about May 19, 2020, CW-3 was awarded an approximately $5,000 no-bid contract at Johnson Houses.

g. CW-3 understood, based on CW-3's interactions with MENDEZ and with other NYCHA employees who similarly required payments for awarding no-bid contracts, that if

---

[5] At an initial interview, CW-3 recalled that CW-3 did not pay MENDEZ for the first few jobs CW-3 completed at Jefferson Houses. CW-3 recalled paying MENDEZ after MENDEZ gave him a hard time about signing off on work that CW-3 had performed for MENDEZ pursuant to a no-bid contract. During subsequent grand jury testimony, CW-3 recalled that CW-3 kept going to Jefferson Houses for work and that MENDEZ eventually said, in substance and in part, that if CW-3 paid him, he would give CW-3 work.

CW-3 did not make payments to MENDEZ, CW-3 would not be paid for work CW-3 had completed or would not receive future NYCHA contracting work.

        h.        On or about October 4, 2023, CW-3 reviewed photobooks containing a photograph of MENDEZ among photographs of dozens of other individuals. CW-3 identified the photograph of MENDEZ as "John Mendez," a superintendent at Jefferson Houses and an assistant superintendent at Johnson Houses, the NYCHA employee to whom CW-3 had made payments in exchange for no-bid contracts from NYCHA.

        7.        Based on my review of records provided by NYCHA, my discussions with other law enforcement officers, and my discussions with a cooperating witness ("CW-25"),[6] who has performed work at NYCHA's Jefferson Houses, among other developments, I have learned the following, in substance and in part:

        a.        Since at least 2016, CW-25 performed contracting work for NYCHA under contracting companies (the "CW-25 Companies") that purchased materials from various retailers, including retailers that sold items in interstate commerce.

        b.        CW-25 began performing work at Jefferson Houses in or about December 2016. The CW-25 Companies completed approximately 30 contracts at Jefferson Houses between in or about December 2016 and in or about January 2019, during the time in which JUAN MENDEZ, the defendant, served as a superintendent at that NYCHA facility.

        c.        CW-25 paid MENDEZ at least twice for no-bid contracts that CW-25 was awarded at Jefferson Houses.[7] CW-25 paid MENDEZ in an area of the basement of Jefferson Houses where there were no cameras. While MENDEZ told CW-25, in substance and in part, that he did not want the money, MENDEZ nevertheless accepted the payments from CW-25. CW-25 paid MENDEZ despite MENDEZ's claim that he did not want the money because CW-25 believed, based on CW-25's interactions with MENDEZ and other NYCHA employees, that CW-25 would receive additional NYCHA contracting work from MENDEZ if CW-25 paid him. CW-25's payments to MENDEZ varied from approximately $300 to $400 for an approximately $5,000 no-bid contract.

        d.        On or about September 26, 2023, CW-25 reviewed photobooks containing a photograph of MENDEZ among photographs of dozens of other individuals. CW-25 correctly identified the photograph of MENDEZ as "Juan Mendez" at Jefferson Houses, the NYCHA employee to whom CW-25 had made payments in exchange for no-bid contracts from NYCHA.

---

[6] CW-25 testified in the grand jury pursuant to an immunity order, and previously provided information to law enforcement during additional interviews pursuant to an agreement to extend the same immunity protections to the interviews. CW-25 has never worked at any of the contracting companies where CW-3 worked. Both CW-25 and CW-3 were interviewed separately and instructed by law enforcement not to discuss the substance of their interviews and grand jury testimony in connection with this investigation, and I have no reason to believe that CW-25 and CW-3 know each other.

[7] CW-25 also believed that CW-25 may have paid MENDEZ at another development, but did not remember what one.

8. Based on my review of financial records for JUAN MENDEZ, the defendant, and a financial analysis of such records, I have learned the following:

a. From in or about October 2016 through in or about November 2023, over 150 cash deposits were made into a particular bank account in the name of MENDEZ ("Account-1"). Specifically, MENDEZ made approximately 79 cash deposits of $100 or more, totaling over $28,000, into Account-1.

b. The cash deposits into Account-1 include deposits during the time periods when CW-3 paid MENDEZ between approximately $500 and $1,000 per no-bid contract. For example, MENDEZ deposited exactly $500 in cash into Account-1 on or about each of the following dates: February 10, 2020, and January 19, 2021.

c. The cash deposits into Account-1 also include deposits during the time period when CW-25 paid MENDEZ between approximately $300 and $400 for at least approximately two no-bid contracts. Certain of these cash deposits were made around the time that the CW-25 Companies were awarded no-bid contracts at Jefferson Houses. For example, on or about February 20, 2018, MENDEZ deposited approximately $2,000 in cash into Account-1. Approximately, seven days earlier, on or about February 13, 2018, the CW-25 Companies were awarded two no-bid contracts at Jefferson Houses each worth approximately $5,000. In addition, on or about February 26, 2018, the CW-25 Companies were awarded a no-bid contract at Jefferson Houses worth approximately $5,000.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of JUAN MENDEZ, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

/s/ Rasove Ramirez by SDA with permission
_____
RASOVE RAMIREZ
Special Agent
U.S. Department of Housing and Urban Development
Office of Inspector General

Sworn to me through the transmission of
this Complaint by reliable electronic
means (telephone), this 31st day of January, 2024.

_____
THE HONORABLE STEWART D. AARON
United States Magistrate Judge
Southern District of New York