

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

February 6, 2025

**VIA ECF**

The Honorable Sarah L. Cave
United States Magistrate Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Juan Mendez*, 24 Cr. 597 (SLC)

Dear Judge Cave:

      The Government respectfully submits this letter in advance of the February 12, 2025 sentencing of defendant Juan Mendez in the above-referenced matter. For the reasons set forth below, the Government respectfully submits that a sentence of at least two years' probation with a community service requirement would be sufficient but not greater than necessary to serve the purposes of sentencing.

      **I.**    **Background**

      The New York City Housing Authority ("NYCHA") is the largest public housing authority in the country, housing approximately 1 in 17 New Yorkers. It provides housing to low- and moderate-income New York City residents and is funded in large part from the U.S. Department of Housing & Urban Development. (Presentence Report ("PSR") ¶¶ 8-9; *see generally* Dkt. 7 (background letter)). From at least 2016 through 2021, the defendant was employed as a superintendent or assistant superintendent at the Jefferson Houses and the Johnson Houses, NYCHA developments located in Manhattan. (PSR ¶¶ 13-14). In those roles, the defendant was involved in awarding construction and repair jobs to contractors seeking to be hired for work at these NYCHA properties. (PSR ¶¶ 9-11). For jobs that were under a certain threshold (often referred to as "no-bid contracts"), the defendant could hire contractors directly without a competitive bid process or other oversight. (*Id.*). However, rather than selecting contractors based solely on merit, the defendant selected contractors for work based on the payment of bribes.

      From at least 2016 through at least 2021, the defendant accepted bribes from at least two different contractors who performed work at Jefferson Houses and Johnson Houses in exchange for awarding multiple no-bid contracts to those contractors. Specifically, the contractors each paid the defendant approximately $500 or $1,000 in cash for each no-bid contract that was received from the defendant. These no-bid contracts were each worth between $5,000 and $10,000. The contractors paid these bribes based on express requests from the defendant and based on the understanding that if they did not pay, they would not be awarded additional no-bid contracts by the defendant for work at that housing development. (PSR ¶¶ 15-25; *see* Dkt. 1 (Compl.)). The

defendant's bank records corroborate that, during the relevant time period, he was receiving and depositing large amounts of cash into his bank account. (PSR ¶¶ 26-28). In total, the defendant accepted between approximately seven and 15 bribes totaling approximately $3,500 in exchange for awarding no-bid contracts worth a total value of at least $45,000. (PSR ¶ 29).

The defendant was charged by complaint in connection with this conduct in early February 2024 and was arrested on February 6, 2024. (PSR at 1).

The defendant's actions were part of a widespread culture of corruption at NYCHA. The Government charged 70 current and former NYCHA employees, including the defendant, with bribery and extortion offenses in a single, coordinated takedown. Although the majority of these defendants were charged separately, the charging instruments allege that these NYCHA employees received similar bribe amounts from contractors for no-bid contracts. In fact, the required bribe amount (typically between 10 or 20 percent of the contract's value) became well known among contractors because so many NYCHA employees were demanding payments for work. (*See* Dkt. 7 (background letter)).[1]

The impact of this corruption by former and current NYCHA employees was vast: collectively, the 70 defendants are alleged to have received more than $2 million in bribe or extortion payments from NYCHA contractors in exchange for awarding at least approximately $13 million in NYCHA contracts at approximately 96 developments in all five boroughs. (*Id.*).

## II.  The Defendant's Plea and Guidelines Range

On October 15, 2024, the defendant pleaded guilty to an Information charging one count of defrauding the U.S. Department of Housing and Urban Development ("HUD"), in violation of 18 U.S.C. § 1012, a misdemeanor. (PSR ¶¶ 1-3). Specifically, the defendant was charged with soliciting and accepting a total of at least $3,500 in bribes for arranging no-bid contracts from NYCHA worth a total of at least approximately $45,000. (PSR ¶ 2).

As set forth in the parties' plea agreement and confirmed in the Presentence Report, the defendant's base offense level is 14 pursuant to U.S.S.G. § 2C1.1(a)(1) because he was a public official, and that level is increased by two levels because the offense involved more than one bribe. Assuming the defendant clearly demonstrates acceptance of responsibility, a three-level reduction will be warranted pursuant to U.S.S.G. § 3E1.1(a) and (b). A two-level reduction is also applied because the defendant has zero criminal history. Thus, the defendant's total offense level is 11. (PSR ¶¶ 4, 35-45).

---

[1] To date, 50 defendants have pleaded guilty to felony charges, three defendants have been convicted of felony charges after trial, and ten defendants have pleaded guilty to misdemeanor charges. Eight of the defendants who pleaded guilty to misdemeanors have been sentenced, and all received periods of probation (or, in one case, supervised release) ranging from six months to two years, three of which included community service requirements of 30 hours (in two cases) and 75 hours (in one case).

The defendant has zero criminal history points and is therefore in Criminal History Category I. (PSR ¶¶ 46-48).

Based on the above calculations, the defendant's stipulated Guidelines range is 8 to 12 months' imprisonment (capped by the 12-month statutory maximum sentence, where the Guidelines would otherwise recommend a range of 8 to 14 months' imprisonment). (PSR ¶ 89). At Guidelines level 11, the applicable fine range is $4,000 to $40,000. (PSR ¶ 98). The Probation Office recommends a sentence of two years of probation. (PSR at 24).

The defendant has agreed to pay $3,500 in restitution to NYCHA. (PSR ¶¶ 4, 100).

### III. Discussion

#### A. Applicable Law

Following *United States v. Booker*, 543 U.S. 220 (2005) and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), the Guidelines continue to provide a critical touchstone. Indeed, while the Guidelines are no longer mandatory, they remain in place, and district courts must "consult" them and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court has stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After calculating the Guidelines range, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(l)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant;
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Although the Court may not presume the reasonableness of a within-Guidelines sentence, the Second Circuit has recognized that "[i]n the overwhelming majority of cases, a Guidelines

sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006); *see also Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007) ("We have accordingly recognized that, in the ordinary case, the Commission's recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." (quotations omitted)).

### B.  A Sentence of At Least Two Years' Probation with a Community Service Requirement Is Appropriate in This Case

In this case, considering all of the Section 3553(a) factors, a sentence of at least two years' probation with a community service requirement would be sufficient, but not greater than necessary, to serve the purposes of sentencing.

*First*, the seriousness of the defendant's conduct and the need to promote respect for the law support imposition of a sentence that includes a community service obligation. The defendant repeatedly betrayed his employer and abused the position of trust that he held, and ultimately betrayed the trust of the residents of the NYCHA developments for which he had responsibility, all in order to enrich himself. As a NYCHA superintendent, the defendant earned a substantial annual salary, but he nevertheless corrupted his position of authority for personal greed. And the defendant's conduct was not aberrational or a momentary lapse in judgment; he engaged in this offense on a sustained basis, accepting $500 or $1,000 at a time repeatedly over the course of years.

Courts in this District have repeatedly emphasized the harm that these bribery and corruption offenses cause. For example, Judge Caproni observed in sentencing another NYCHA employee that public corruption is "one of the most serious of all federal offenses" because "[t]his country cannot exist if the public does not trust that public officials are operating as servants of the people and not corruptly for their own personal gain." *United States v. Rupnarain*, No. 24 Cr. 125 (VEC), Dkt. 28 at 25 (S.D.N.Y. Aug. 5, 2024). Judge Cote, in sentencing a different NYCHA employee to 15 months' imprisonment for accepting approximately $6,000 in bribes—the same amount that this defendant accepted—described the offense as "a real betrayal":

> You betrayed your employer, you betrayed the city, you betrayed the residents of the houses at which you worked. This was a corruption of your job and your duties. You were given responsibility and authority, and instead, you used that to get money you had no right to. And corruption is a corrosive, destructive issue. People need to have faith in their government. They need to have faith in their public housing that it's a community resource that can be used to support those in need.

*United States v. Figueroa*, No. 22 Cr. 605 (DLC), Dkt. 27 at 17 (S.D.N.Y. Feb. 9, 2023).

As another example, Judge Oetken observed in sentencing a different NYCHA defendant to five months' imprisonment for taking $9,500 in bribes that:

> Because the conduct was so widespread within NYCHA, one might look at it, although superficially, like it was sort of routine behavior and therefore almost innocuous, but it was not innocuous or innocent, and it's important that we all understand that. It's the kind of conduct that undermines faith in our government and in institutions that are supposed to help people. It is criminal conduct that is hard to detect. It's more subtle than some others forms of criminal conduct, but there are real victims; not just NYCHA but sort of the public's faith in the government. It creates cynicism, this sort of corruption.

*United States v. Escobar*, No. 24 Cr. 213 (JPO), Dkt. 23 at 25-26 (S.D.N.Y. July 25, 2024).

In addition to undermining the public's trust in NYCHA, the conduct damaged NYCHA's mission and, potentially, the wellbeing of its residents. Rather than select contractors based on the quality of their work and the price they offered, the defendant chose contractors based on his own personal greed. A sentence two years' probation with a community service requirement is needed to appropriately punish the defendant's repeated betrayal of public trust for personal gain and to promote respect for the law. *See Rupnarain*, Dkt. 28 at 26 ("I think society expects public corruption to be treated seriously and for corrupt officials to be punished.").

*Second*, the proposed sentence is vital to deter others who may seek to engage in similar schemes—a factor that would not be adequately addressed with a sentence of merely one year of probation with no community service requirement as requested by the defendant. By charging 70 defendants with this conduct, the Government sought to send a real message that this type of behavior will not be tolerated. However, this message is likely to ring hollow if these defendants do not face real consequences for repeated abuses of their positions of responsibility over the well-being of some of the most vulnerable New Yorkers. As courts in this Circuit have recognized, "[t]he need for general deterrence is particularly acute in the context of white-collar crime." *United States v. Johnson*, No. 16 Cr. 457 (NGG), 2018 WL 1997975, at *5 (E.D.N.Y. Apr. 27, 2018). Many other individuals—like the defendant—hold similar positions of public trust, have the opportunity to commit similar offenses, and face similar temptations to betray their offices, and so a substantial term of imprisonment is needed to deter these individuals from making the same choices the defendant did. *Cf. United States v. Emmenegger*, 329 F. Supp. 2d 416, 427 (S.D.N.Y. 2004) (discussing particular need to deter financial institution employees from breaching trust of employer by engaging in frauds). The need for deterrence is also particularly acute for crimes that are difficult to detect and punish, like bribery offenses often are. *See Rupnarain*, Dkt. 28 at 29 (noting that "these sorts of schemes are very hard to catch," and "because people know they're hard to catch, it's got to be that the punishment is sufficiently severe that people will say, I'm not going anywhere close to that because I know what happens to even good people"); *accord United States v. Zukerman*, 897 F.3d 423, 430 (2d Cir. 2018) (general deterrence considerations "argue for punishing more heavily those offenses that are either lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it"). Any sentence imposed in this case must send a message to those who seek to illegally profit from their NYCHA positions—or other positions of trust in local, state, or federal government agencies—that such conduct will not be tolerated and that serious

consequences will result. A substantial period of probation as well as the requested community service requirement will meaningfully contribute to general deterrence in this case.

*Third*, the defendant's long employment history at NYCHA and his meritorious service there does not distinguish him from any other of the 70 defendants charged with taking bribes while at NYCHA or individuals who commit bribery generally. It is precisely by virtue of a history of service that bribery defendants are generally able to obtain the position of public trust that they then, in turn, exploit and use to solicit bribes. *See United States v. Fishman*, 631 F. Supp. 2d 399, 403 (S.D.N.Y. 2009). In other words, an otherwise unblemished work history is often part and parcel of bribery and does not take the defendant out of the heartland of bribery offenses or defendants. In fact, it is precisely what is so concerning about the defendant's conduct: by virtue of his long employment and service, he was entrusted with a position of privilege and responsibility and chose to betray that position on multiple occasions by using it to his own advantage. The Court should not grant leniency based on the same history of service that laid the foundation for the defendant's crimes.

It is also appropriate to acknowledge, under Section 3553(a), that the defendant accepted responsibility for his conduct early by waiving indictment, waiving discovery, and pleading guilty to an Information. In the context of a 70-defendant case, this early acceptance is meaningful and saved the Government substantial resources in connection with grand jury practice, discovery, and general case management above and beyond what is applicable in a typical case. The Government acknowledges that the defendant's early acceptance warrants a modest downward adjustment from what the Government would otherwise be requesting. On balance, a sentence of at least two years' probation with a community service requirement is sufficient to serve the purposes of sentencing but would be no greater than necessary to do so.

## IV. Conclusion

For the reasons set forth above, the Court should impose a sentence of at least two years' probation with a community service requirement, as well as the agreed-upon restitution.[2]

A victim impact statement from Lisa Bova-Hiatt, NYCHA's Chief Executive Officer, is attached hereto as Exhibit A, and a proposed restitution order is attached hereto as Exhibit B.

Respectfully submitted,

DANIELLE R. SASSOON
United States Attorney

by: ⎽⎽⎽⎽/s/⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽
Jerry Fang / Jacob R. Fiddelman /
Meredith Foster / Catherine Ghosh
Assistant United States Attorneys
(212) 637-2584/-1024/-2310/-1114

cc: Kenneth J. Montgomery, Esq.

---

[2] In light of recent Second Circuit decisions, the Government respectfully requests that, for each special condition of supervised release or probation that the Court intends to impose, the Court briefly state its reasons for concluding that each such special condition is "reasonably related" to at least one of the factors set forth in U.S.S.G. § 5D1.3(b). *See, e.g.*, *United States v. Sims*, 92 F.4th 115 (2d Cir. 2024) (vacating special condition and remanding for district court to provide sufficient explanation for imposition of condition); *United States v. Oliveras*, 96 F.4th 298 (2d Cir. 2024) (same); *United States v. Jimenez*, No. 22-1022, 2024 WL 1152535 (2d Cir. Mar. 18, 2024) (summary order) (same).